UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

DON KEMP,

          Plaintiff,

         v.                                      Case No. 06-C-0076

GLENN GRIPPEN,

          Defendant.

DECISION AND ORDER DENYING MOTION TO HOLD CASE IN ABEYANCE, GRANTING MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE

        Don Kemp sues Glenn Grippen, director of the Milwaukee Veterans Affairs Medical Center, for violations of the Privacy Act and Freedom of Information Act. Kemp complains that Grippen has failed to release Kemp's pre-1999 VA file, including records from the Honolulu Veterans Affairs Medical Center (Honolulu VAMC). Kemp admits that he filed a prior lawsuit regarding his VA medical records.

        In this case, Kemp seeks a court order directing Grippen to give him a copy of the pre-1999 VA medical file, including all documents sent to the Milwaukee VA by the Honolulu VA. In addition, he seeks to have Grippen held in criminal contempt of court and charged with perjury for lying in the previous litigation.

        Grippen moves for summary judgment on several grounds, including res judicata and collateral estoppel. Kemp responded to the summary judgment motion with a short opposition brief and a motion for an extension of time to file an amended response. Kemp asked for more time because he was awaiting certain documents from the Honolulu VAMC and the Office of Congressman James Sensenbrenner. When the motion for an extension of time was filed, this case was assigned to Senior Judge Thomas J. Curran.

Judge Curran denied the motion, noting that Kemp had suggested no time limit for submitting the amended response.

Thereafter, on June 6, 2006, the case was reassigned to this court following Judge Curran's retirement. Kemp then filed a motion "to hold this case in abeyance," indicating that he was still awaiting the same documents as before and that he wanted to file another response to Grippen's summary judgment motion and his own summary judgment motion.

## MOTION TO HOLD THE CASE IN ABEYANCE

In his motion to hold the case in abeyance, Kemp provided no new circumstances justifying a decision different from that of Judge Curran denying Kemp an extension of time. Also, Kemp failed to correct the defect that Judge Curran noted, i.e., no outer time limit was proposed for filing an amended response to Grippen's summary judgment motion.

Further, Kemp stated in the motion to hold the case in abeyance, filed June 15, 2006, that he would "notify the court immediately upon receiving the documents stated in [the] complaint and previous pleadings in this case, and . . . then file another response to the defendants' summary judgment motion." However, to date, notwithstanding the passage of months since the motion was filed, Kemp has filed nothing suggesting that he has not received the documents claimed to be needed. Therefore, because no further holding-pattern is justified, the motion to hold this case in abeyance will be denied.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no

2

Case 2:06-cv-00076-CNC   Filed 03/20/07   Page 2 of 14   Document 18

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the opposing party must designate specific facts to support or defend each element of his cause of action, showing that a genuine issue exists for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). To establish that a question of fact is "genuine," the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in his favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249.

A. Undisputed Facts

With his motion for summary judgment, Grippen filed proposed findings of fact as required by Civil L.R. 56.2(a). Kemp was required to respond to them when he filed his brief opposing summary judgment. Civil L.R. 56.2(b)(1). However, he did not do so. "In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." Civil L.R. 56.2(e). Grippen gave the pro se Kemp sufficient warnings about the need for filing a response to the proposed findings of fact and the need to proffer evidence in

3

response to Grippen's evidence, as required by Civil L.R. 56.1. (*See* Mot. for Summ. J. at 1-4.) Therefore, in the absence of such proof, this court takes Grippen's proposed findings of fact as true. Those proposed facts, the evidence presented by Grippen, including certain documents from case number 03-C-599 in this district, and the complaint in the present case are the bases for the following statement of undisputed facts.[1]

The C. J. Zablocki Veterans Affairs Medical Center in Milwaukee (Milwaukee VAMC), is a full-service Veterans Affairs medical facility, providing inpatient and outpatient care. (Br. in Supp. of Mot. for Summ, J., Proposed Findings of Fact (PFF) ¶ 1; Smith Decl. ¶¶ 1, 2.) Glen W. Grippen[2] is Director of the Milwaukee VAMC. (PFF ¶ 2; Smith Decl. ¶ 2.) The Milwaukee VAMC's Release of Information (ROI) unit of the Medical Information Systems Division responds to Privacy Act requests, Freedom of Information Act requests, and other requests for medical records. (Smith Decl. ¶ 3.)

On July 29, 1999, Kemp submitted to the Milwaukee VAMC a written request for all documents in his file. (PFF ¶ 4; Smith Decl. ¶ 4.) He went to the Milwaukee VAMC's ROI Unit to review his medical record on August 2, 1999. (PFF ¶ 6; Smith Decl. ¶ 5.) ROI clerk Charles Greiner provided Kemp with his original medical record, consisting of one

---

[1] In Kemp's brief in opposition to the motion for summary judgment, he says that the document constitutes his "affirmation that the contents are correct to the best of my first-hand knowledge, belief and information." (Pl.'s Reply to Def.'s Answer and to Def.'s Mot. for Summ. J. at 1.) This statement does not satisfy 28 U.S.C. § 1746, which requires a statement to be declared as true under penalty of perjury. Further, declarations and affidavits must be based on personal knowledge; Kemp's reference to his "belief and information" is insufficient.

[2] Kemp spells the name "Glenn," but the declaration of the Program Manager for the Milwaukee VAMC Release of Information Unit spells the name "Glen." (Smith Decl. ¶ 2.)

4

volume. (PFF ¶ 8; Smith Decl. ¶ 5.) The medical record was not returned and has not been recovered. (PFF ¶ 10; Smith Decl. ¶ 5.)[3]

Over the course of the next several years, Kemp or his attorneys requested disclosure or copies of medical information from Kemp's Milwaukee VAMC's file. (PFF ¶¶ 11-66; Smith Decl. ¶¶ 5-32.) To the knowledge of Beth Ann Smith, the ROI unit Program Manager, there are no outstanding Privacy Act or FOIA requests concerning Kemp's medical records; all documents that Kemp requested and that are within the custody of the Milwaukee VAMC have been produced. (PFF ¶¶ 67-68; Smith Decl. ¶ 33.)

On June 24, 2003, Kemp filed case number 03-C-599 against Grippen. (PFF ¶ 69; Knepel Decl. Exs. A, 1 at 8.) The complaint stated that Kemp was compiling information to file a medical malpractice lawsuit against the VA regarding a surgery that resulted in medical problems and a failure to treat him for certain medical problems. (Knepel Decl. Ex. 1 at 5.) Kemp charged that he had attempted to obtain his VA file from Grippen repeatedly, but that Grippen told him that the file was misplaced or lost. (*Id.* at 5-6.) However, Kemp asserted that in or before February 2003 Grippen admitted that while the hard copy was lost, "the entire file is in a computer database and Title 5 [gave Kemp] the right to obtain a copy." (PFF ¶ 71; Knepel Decl. Ex. 1 at 6.) Kemp alleged that following February 2003 he made one request a month for his file, using the VA's forms, and that Grippen failed to respond. (PFF ¶ 72; Knepel Decl. Ex. 1 at 6.) As relief, Kemp asked for monetary damages and orders that Grippen provide him with "a copy of [his]

---

[3]Kemp asserts in his complaint and argues in his opposition brief that Grippen or the Milwaukee VAMC indeed has the pre-1999 file, but he has provided no evidence supporting that argument.

5

entire VA medical file" and assurance that Grippen would not retaliate against him. (PFF ¶ 73; Knepel Decl. Ex. 1 at 8.)

In an amendment to the complaint, Kemp added that in lieu of a copy of his VA file, he wanted unfettered access to his VA medical file so he could inspect it for accuracy and copy it himself in the presence of a third party. (Knepel Decl. Ex. 7.) Kemp's declaration, filed with his motion to amend the complaint, stated that on September 15, 2003, Grippen provided him with a copy of his medical file, but several documents, dated 1995 to 1999, were missing, including documents provided to the Milwaukee VAMC by the Honolulu VAMC. (Knepel Decl. Ex. 8 at 2.) Kemp said that but for three documents, the items provided spanned 1999 to August 2003. (*Id.*) Further, Kemp contended that despite his numerous records requests, no one at the VA or another federal agency ever investigated whether he (Kemp) played a part in the loss or misplacement of any part of his VA medical file. (PFF ¶ 79; Knepel Decl. Ex. 8 at 3.) Lastly, Kemp asserted that he needed the documents from 1995 to 1999 to substantiate his medical malpractice case against the VA. (PFF ¶ 80; Knepel Decl., Ex. 8 at 3.)

Grippen filed a motion for summary judgment in case number 03-C-599, supported by the declarations of ROI clerk Greiner and then-ROI Program Manager Mary Jo Jankovich. (PFF ¶ 74; Knepel Decl. Exs. A, 2.) The motion argued that damages were not recoverable in access request cases, that Grippen was not a proper party in a Privacy Act lawsuit, that no requests for records remained outstanding, and that the VA medical center provided Kemp with a complete set of his medical records. (PFF ¶ 76; Knepel Decl. Exs. A, 4.) Greiner and Jankovich declared that Kemp's medical file disappeared after Kemp had viewed the file on August 2, 1999, that all of Kemp's requests for records were

answered, and that all records within the custody of the Milwaukee VAMC were provided. (PFF ¶ 75; Knepel Dec., Exs. A, 4, 5.)

Kemp responded to the motion for summary judgment and admitted receiving a portion of the file, argued that Grippen's claim that the remainder of the file was lost or in Kemp's possession was false, and accused Grippen of omitting from the file documents that would render the Milwaukee VAMC liable for malpractice. (Knepel Decl. Ex. 12 at 2.)

Judge Adelman granted Kemp's motion to amend the caption of the case to substitute the United States Department of Veterans Affairs (VA) for Grippen. (PFF ¶ 83; Knepel Decl. Exs. A, 14.) Thereafter, on April 26, 2004, Judge Adelman granted Grippen's summary judgment motion in favor of the VA in case number 03-C-599. The decision provides in pertinent part:

> Pro se plaintiff Don Kemp brings this action under the Privacy Act, 5 U.S.C. § 552a, alleging that he asked defendant, the United States Department of Veterans Affairs (hereinafter "VA"), for a copy of his medical file and that defendant did not comply with such request. Defendant indicates that it has complied with plaintiff's request. Before me now is defendant's motion for summary judgment.
>
> In its motion, defendant includes affidavits and exhibits supporting its assertion that is [sic] provided defendant with a copy of his file. One such exhibit is a cover letter to plaintiff from Mary Jo Jankovich, who is in charge of releasing information for the VA, stating: "Enclosed please find a copy of your entire medical record through August 20, 2003." (Jankovich Decl., Ex. 28.) The letter includes a notation that three volumes of medical records were enclosed with it. Defendant also submits affidavits suggesting that after plaintiff reviewed his file at the VA, he may have removed documents from the file and not returned them. Plaintiff does not dispute that he possesses copies of some of his records.
>
> . . . .

> Defendant supports its motion with evidence indicating that, in response to plaintiff's request, it provided him with a copy of his medical records. Thus, the burden shifts to plaintiff to present evidence demonstrating that there is a genuine issue as to whether defendant did in fact turn over the records that he requested. However, although plaintiff contends in his pleadings and briefs that defendant did not comply with his requests, he submits no affidavits or other admissible evidence in support of this assertion. Therefore, he fails to create a genuine issue of material fact and defendant's motion must be granted.

(PFF ¶ 88; Knepel Decl., Ex. 17 at 1-3 (citation omitted).) Judgment was entered immediately. (PFF ¶ 89; Knepel Decl., Ex. A, Ex. 18.)

Because the key issue in the present case is res judicata, the exact allegations in the present complaint are quoted, even though lengthy. Kemp asserts:

> 1. In previous Privacy Act litigation in this court, Grippen forwarded to me a copy of my partial, post-1999 VA medical file only after I filed the litigation.
>
> 2. Grippen claimed that my pre-1999 file was not available, although the partial file contained several but not all documents from the pre-1999 file.
>
> 3. Grippen also claimed that he could not locate any documents I requested from the Honolulu VA because I was never treated at the Honolulu VA, although one of the documents Grippen forwarded to me in the partial post-1999 file made specific reference to my treatment at the Honolulu VA.
>
> 4. I submitted to the court as evidence copies of the pre-1999 documents Grippen forwarded to me, and a copy of the document that verified my treatment at the Honolulu VA.
>
> 5. I requested that the court conduct appropriate proceedings and procedures to compel Grippen to forward to me a copy of my pre-1999 VA medical file, including my Honolulu VA records.

> 6. Ignoring the documented evidence and instead blindly accepting Grippen's unsubstantiated assertion, the court injudiciously dismissed my Privacy Act lawsuit on the ground that after I filed the suit Grippen forwarded a copy of the post-1999 file to me and that the pre-1999 file did not exist.
>
> 7. Since then, Grippen has admitted in a documented reply to Congressman Sensenbrenner that my pre-1999 file does exist and claimed that I have access to it.
>
> 8. All of my requests since then for a copy of the pre-1999 file have been ignored by Grippen.
>
> 9. The Privacy Act requires Grippen to give me a copy of my entire file, which he refuses to do even after admitting to a US Congressman that the file exists and alleging to the Congressman that I have access to it.
>
> 10. Grippen does not want me to have the pre-1999 file because it establishes that all or most of my current health problems are due to Milwaukee VA malpractice and negligence, and further establishes that the Milwaukee VA negligence continued even after the Honolulu VA made specific recommendations for treatement that the Milwaukee VA refused to provide me with.
>
> 11. I want the court to direct Grippen to forward me a copy of the pre-1999 VA medical file, including all documents that were sent to the Milwaukee VA by the Honolulu VA.
>
> 12. In addition, I want the court to charge Grippen with criminal contempt of court, and perjury, for lying to the court in my previous Privacy Act litigation.

(Compl. at 1-2.)

B.  Discussion

The related doctrines of res judicata and collateral estoppel insure "that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same

9

parties or their privies.'" *Montana v. United States*, 440 U.S. 147, 153 (1979) (alteration in original) (quoting *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)).

Under the doctrine of res judicata, a final judgment on the merits bars future litigation by the parties or their privies on the same cause of action. *Id.* Res judicata has three elements: (1) an identity of the parties or their privies, (2) an identity of the causes of action, and (3) a final judgment on the merits. *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 177 (7th Cir. 1995); *accord Highway J Citizens Group v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006), *petition for cert. filed*, no. 06-98, 75 U.S.L.W. 3398 (Jan. 10, 2007). Privity is applied to those with a sufficiently close identity of interests. *People Who Care*, 68 F.3d at 177. A person may be bound by a prior judgment if one of the parties to that judgment is so closely aligned with his interests as to be his virtual representative. *Id.* Identity of causes of action exists where there is a "single core of operative facts giving rise to a remedy," *id.* (internal quotation marks omitted), i.e., where the second cause of action is based on the same facts and raises the same issues as the first cause of action, *id.* at 177-78. If all three elements are met, res judicata bars all issues actually decided in the prior suit as well as all issues that could have been raised in that lawsuit. *Highway J Citizens Group*, 456 F.3d at 741.

Here, res judicata applies to bar the present lawsuit. There is no dispute that a final judgment issued in case number 03-C-599 on April 26, 2004. As for privity, notwithstanding that Grippen is named as the defendant in this case and the VA was the defendant named on the judgment in case number 03-C-599, an identity of parties exists. First, the proper defendant for this case is the agency rather than an individual. Both the Privacy Act and FOIA require the agency to be the proper party defendant. 5 U.S.C.

10

§ 552a(g)(1) (stating that an individual "may bring a civil action against the agency"); *Bavido v. Apfel*, 215 F.3d 743, 747 (7th Cir. 2000) (stating that the Privacy Act authorizes suits only against agencies, not individuals, but that the government can waive the improper denomination of the defendant); *Santos v. DEA*, 357 F. Supp. 2d 33, 36 (D.D.C. 2004) ("A plaintiff may not assert a FOIA claim against individual federal officials."). Second, the substitution of the VA for Grippen in case 03-C-599 establishes their privity. The parties and court treated the two as interchangeable – thus having identical interests – for purposes of the summary judgment motion in case number 03-C-599. The motion was brought by Grippen but granted in favor of the VA.

Finally, except as to one point the present case is based on the same facts and raises the same issues as case number 03-C-599, such that Kemp's claims are barred. The factual basis for the present case is Grippen's failure to provide Kemp with his pre-1999 medical records, including records forwarded to the Milwaukee VAMC by the Honolulu VAMC. Case number 03-C-599 encompassed the same factual issue, as evidenced by Kemp's affirmation (Knepel Decl. Ex. 8) and Judge Adelman's decision. Judge Adelman stated that the evidence before him indicated that in response to Kemp's requests the Milwaukee VAMC provided him with a copy of his medical records, and that Kemp presented no evidence drawing into question whether the Milwaukee VAMC had provided everything and indicating that something was missing.

The identity of issues is highlighted by Kemp's complaint in this case, indicating that the existence and disclosure of the pre-1999 file was litigated in case number 03-C-599. Kemp complains that Judge Adelman "injudiciously" dismissed case number 03-C-599 on the ground that Grippen "forwarded a copy of the post-1999 file . . .

11

and that the pre-1999 file did not exist." (Compl. at 2.) As one request for relief Kemp asserts that Grippen should be directed to forward to him a copy of the pre-1999 medical file; Judge Adelman determined the same issue against Kemp in case number 03-C-599.

The present complaint does refer to pre-1999 file requests Kemp made to the Milwaukee VAMC *subsequent* to Judge Adelman's decision. But the post-judgment requests did not create any new cause of action. The "core of operative facts" remained the same: Kemp is seeking medical records that he claims the Milwaukee VAMC has but the Milwaukee VAMC claims it does not. Judge Adelman found that the Milwaukee VAMC had already turned over everything in Kemp's file to him. Regardless of whether Kemp makes one or a hundred requests following Judge Adelman's decision, as long as the facts surrounding the contents of the file remain unchanged, the cause of action is identical.

The only point on which the two cases may not overlap is Kemp's assertion in the present case that subsequent to Judge Adelman's dismissal of 03-C-599 Grippen admitted in a letter to Congressman Sensenbrenner that the pre-1999 file exists. (Compl. at 2.) Obviously, Judge Adelman could not have adjudicated the import of an admission by Grippen that had not yet been made. Changed factual circumstances may eliminate a res judicata bar, as the core of operative facts would be different. *Bank of the N. Shore v. FDIC*, 743 F.2d 1178, 1186 (7th Cir. 1984) ("Neither res judicata nor collateral estoppel would bar a new federal suit because of the intervening changed circumstances creating new legal conditions."); *see Montana*, 440 U.S. at 159 ("[C]hanges in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues.").

12

But notwithstanding Kemp's assertion in the complaint that such an admission occurred after Judge Adelman's decision, it appears that this issue, too, was litigated in case number 03-C-599. Kemp asserted in the original complaint of case number 03-C-599 that after he had "elicited the aid of congressmen . . . Grippen responded with an admission that, while the hard copy of [his] VA file is allegedly 'lost' or 'misplaced', the entire file is in a computer database." (Knepel Decl. Ex. 1 at 6.) Kemp has not distinguished the admission alleged in the present case from the similar admission alleged in the prior case.

Moreover, even if Kemp is claiming in this case some new admission by Grippen following the judgment in case number 03-C-599, he has failed to back up his allegation with evidence. The Milwaukee VAMC's present ROI Program Manager Smith says that the Milwaukee VAMC has released to Kemp all of the records the facility has and that he has requested. At the summary judgment stage, Kemp cannot rest on the allegations of his complaint, but must back up his charges with evidence. But, he has not done so. Even with months of a de facto extension, he has failed to present evidence of any admission by Grippen that pre-1999 medical records exist or that the Milwaukee VAMC indeed holds any records which have not been released to Kemp.

Kemp does assert that Grippen lied to the court in case number 03-C-599. (Compl. at 2.) Res judicata does not bar a second lawsuit where judgment in the first lawsuit was obtained through fraud. *Comm'r of IRS v. Sunnen*, 333 U.S. 591, 597 (1948). But again, Kemp has failed to produce any evidence of perjury or a fraud on the court. Further, the defendant in case number 03-C-599 was amended and the VA was substituted. Also, Grippen did not testify or provide any affidavit or declaration in support

13

of the summary judgment motion such that he can be deemed to have lied. According to the docket and documents from case number 03-C-599, VA employees Greiner, Jankovich, and Cathy Drahos provided declarations (Knepel Decl. Exs. A, 4, 5, 16), and Kemp neither attacks their veracity nor provides evidentiary support for such an attack.

All three elements of res judicata are met and res judicata applies to bar the present case. Therefore,

IT IS ORDERED that Kemp's motion to hold this case in abeyance is denied.

IT IS FURTHER ORDERED that Grippen's motion for summary judgment is granted and this case is dismissed.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge